Snee *v.* Snee, Appellant.

Argued April 25, 1933.

Before
TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER and JAMES, JJ.

*Louis Vaira,* and with him *James McGill Boyer,* for appellant.—A libellant's testimony, to sustain a charge of adultery, must be of such a clear and convincing character as to leave no other conclusion in the mind of a reasonable person: Diehl v. Diehl, 87 Pa. Superior Ct. 545; Batch v. Batch, 86 Pa. Superior Ct. 60; DuBois v. DuBois, 85 Pa. Superior Ct. 167.

*J. F. Calhoun,* of *Calhoun & Calhoun,* for appellee, cited: Matchin v. Matchin, 6 Pa. 332; Cook v. Cook, 85 Pa. Superior Ct. 403; Ammann v. Ammann, 90 Pa. Superior Ct. 25.

Opinion by Stadtfeld, J., July 14, 1933:

This was an action of divorce brought by the husband against his wife on September 26, 1931, charging the latter with adultery with one Samuel Lauderbaugh, on February 11, 1930, and at divers other days and times in Jefferson Township, Allegheny County. A rule for bill of particulars was filed and thereupon libellant filed a bill of particulars in which libellant in addition to the averment of the particular act of adultery set forth in the libel, alleged that respondent had left his home shortly after 2:30 o'clock on the morning of June 12, 1931, and for several hours was in company with another man in the latter's automobile and in a barn; that respondent later confessed to him that she had committed adultery with the said Samuel Lauderbaugh.

A responsive answer was filed by the respondent, denying the allegations in the libel and bill of particulars.

The case was heard before McNaugher, J., who found from the evidence that the charge was sustained, and on May 9, 1932, granted a decree of divorce to libellant. From that decree this appeal is taken by respondent.

Libellant, at the time of the hearing, was twenty-seven years of age and respondent twenty-six. They were married September 21, 1922 and since then have lived continuously in Allegheny County. One child, a son, Rolland Snee, Jr., aged eight years, was born to them.

Libellant testified that he separated from his wife on August 5, 1931, on account of her conduct in running around with other men; that on June 12, 1931, he left home to go to work at 2:30 o'clock in the morning, and because of being suspicious of his wife, he returned to the house about three o'clock. Before arriving, he observed an automobile leaving his prem-

ises. He followed it and after losing its trail temporarily, he turned around and came back and saw what he believed to be the same car empty and parked beside a barn. He returned home and his wife was not there. She returned between five and six o'clock. She said she had been at the home of William Gumbel, a neighbor, taking care of a sick child. About August 21, 1931, she wrote him a letter stating she had some things she wanted to tell him. He met her in accordance with her request and she wanted him to give her another chance; that same evening she told him she had committed adultery with Samuel Lauderbaugh at various times. She told him she had been down at the barn with a man at the time he had followed her, and that she was down at Gumbel's trying to get them to help her out of the scrape. She said "she was suspicious of us following her and was sure of it when she turned down the McKeesport Road; she could tell one of my lights was out and she recognized the car and they went down in there, thinking they would put me off the track and they stopped by the barn."

William Gumbel and Eleanor Gumbel, his wife, neighbors of the parties, both testified that about five o'clock on the morning of June 12, 1931, respondent came to their house, woke them, stated that she had been out driving with a man other than her husband. She said that Pete (her husband) had gone out to work after two o'clock in the morning, and she left shortly after to go for a ride, and when she wanted to come back, Pete's car was out front and she was afraid to go in for fear he would kill her; that she wanted them to say that their baby had a spasm and that Mr. Gumbel had gone up for her and that she had been down there all the time; she said "Well, if I (Mrs. Gumbel) would just walk up with her, that Pete would see me with her, and he would know she

had been down at my place and everything would be all right.''

Edward Holzhauser, a young man of about the age of twenty years, testified that he had been boarding at the home of libellant and respondent, and that a few days after libellant left respondent he was present in the same room with respondent and a cousin of hers, Gertrude Johnson; that these two were laughing and talking and respondent was talking in tones which he could overhear, telling her cousin about some of her narrow escapes; that when the witness showed an interest in the subject, respondent then told both the cousin and him of one of her narrowest escapes when she one morning went out riding with another man and her husband trailed them to the Walker barn; that she and the man had gotten out of the automobile and had secreted themselves inside the barn where they observed libellant when he arrived; and that had libellant taken the trouble to look inside the automobile he would have seen respondent's hand-bag lying there. This witness also testified that on June 12, 1931, he had been living in a house close by that of the Gumbels and that early that morning he had heard respondent in conversation with the Gumbels but could not hear what was said.

Margaret Snee, a witness for libellant, and married to Thomas, a brother of libellant, testified that for several days, including February 11, 1930, she had been visiting at the home of libellant and respondent; that on the morning of February 11 at about 9:30 o'clock Samuel Lauderbaugh came to the house for the ostensible purpose of taking an order for a store where he was employed; that he remained on the premises until about two in the afternoon; that during a part of the time, for twenty minutes or more, he and respondent were by themselves in the bedroom with the door open; that about two o'clock the witness,

standing at the front window in the livingroom, observed the approach of Harry Snee, Jr., and called to respondent and Lauderbaugh, warning them; and that thereupon respondent and Lauderbaugh came out of the bedroom, flushed and apparently excited, and Lauderbaugh immediately left, passing Harry Snee, Jr., at the door.

Respondent denied the alleged occurrence at the barn testified to by the Gumbels, Holzhauser and libellant. She denied that she had been out with another man on the night or early morning of June 12, 1931; denied that she had gone to the Gumbel's house; denied having made any confession to libellant; denied that she had ever had intercourse with Samuel Lauderbaugh; denied that he had been at her house on February 11, 1930; and, while admitting that Samuel Lauderbaugh was present on one occasion when Margaret Snee was also present, she testified that it was incident merely to his taking an order for his store and that he had only remained upon the premises twenty or twenty-five minutes, arriving there about 9:30 in the morning. Respondent also denied that she had told the witness Holzhauser, in the presence of her cousin, Gertrude Johnson, about having had a narrow escape on June 12, 1931. On the contrary she stated that Holzhauser had told her in the presence of her cousin that in the divorce suit pending he would have to testify against respondent to the effect to which he did testify, because the Snees connected with the Snee Dairy Company, where he was employed, required him to do so on penalty of discharging him. Gertrude Johnson corroborates respondent with reference to Holzhauser.

Samuel Lauderbaugh testified that he was present at the house of libellant and respondent early in Febuary on an occasion when Margaret Snee was present. He testified that he arrived at about 9:30 in the morn-

ing for the purpose of taking an order, that he remained not more than twenty or twenty-five minutes, and that while he was in the house Margaret Snee was constantly present, the three sitting in the living-room. He testified that he did not see Harry Snee, Jr., at the house the day Margaret Snee was there. He denied that he at any time had had intercourse with respondent.

The assignments of error relate (a) to the sufficiency of the evidence and (b) to the alleged abuse of discretion of the court in the examination of the co-respondent.

(a) It is our duty to review and consider the evidence de novo, in order to determine whether it sustains the complaint of the libel. It has been the settled policy of this State since the opinion in Matchin v. Matchin, 6 Pa. 332, written by Chief Justice GIBSON in 1847 down to Esenwein v. Esenwein, 312 Pa. 77, "not to found a sentence of divorce on confession alone." In the instant case, however, we have, in addition to the confession, the testimony of Margaret Snee who was present at the time of the visit of the co-respondent Samuel Lauderbaugh, the length of the latter's visit, the freedom of conversation during this visit, as well as the fact that Lauderbaugh had been keeping company with respondent prior to her marriage with libellant. We are also impressed with the testimony of William Gumbel and Eleanor Gumbel, his wife. Their testimony was frank and straight-forward and bears the earmarks of credibility. We also see no reason to discredit the testimony of Edward Holzhauser. We are more inclined to accept his statements as to the boastfulness of respondent as to her narrow escapes, than the suggestion of a willingness on his part to perjure himself at the instance of some relatives of libellant. We believe, after a careful consideration of the entire evidence, there is

484

sufficient to warrant the conclusion that respondent committed adultery as alleged in the libel.

(b) As to the alleged abuse of discretion by the court below in the cross-examination of the co-respondent: Ordinarily, we do not believe that a court is justified in usurping the functions of counsel in the cross-examination of a witness but this does not apply to divorce cases on account of the interest of the Commonwealth. We believe there is sufficient testimony to warrant our conclusion.

The assignments of error are overruled and the appeal is dismissed.